United States District Court
For the Northern District of California

1

2

3

4

5

6          IN THE UNITED STATES DISTRICT COURT

7         FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9  DWAYNE FOUNTAIN,                        No. C 07-05169 CW

10        Plaintiff,                       ORDER DENYING
                                           PLAINTIFF'S
11     v.                                  MOTION FOR
                                           SUMMARY JUDGMENT
12  MICHAEL J. ASTRUE, Commissioner,       OR REMAND AND
    Social Security Administration,        GRANTING
13                                         DEFENDANT'S
          Defendant.                       CROSS-MOTION FOR
14                                         SUMMARY JUDGMENT
15  _____/

16

17     Plaintiff Dwayne Fountain moves for summary judgment or

18  remand.  Defendant Michael J. Astrue, in his capacity as

19  Commissioner of the Social Security Administration, opposes the

20  motion and cross-moves for summary judgment.  Having considered all

21  of the papers filed by the parties, the Court DENIES Plaintiff's

22  motion for summary judgment or remand and GRANTS Defendant's cross-

23  motion for summary judgment.

24              PROCEDURAL BACKGROUND

25     On June 7, 2004, Plaintiff applied for disability insurance

26  benefits under Title II of the Social Security Act (SSA), alleging

27  disability beginning on April 29, 2004.  AR 59-61.  The date of

28  disability was later amended by the administrative law judge (ALJ)

to October 23, 2003.  AR 303.  The application was denied initially and on reconsideration.  AR 30-31.  On October 26, 2006, the ALJ decided against Plaintiff, finding that Plaintiff could perform a significant number of jobs in the national economy.  AR 17-26. This became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  AR 5-7.

On October 9, 2007, Plaintiff initiated the instant action for judicial review under 42 U.S.C. § 405(g) seeking summary judgment or remand.

FACTUAL BACKGROUND

I.   Plaintiff's Personal History

Plaintiff was born on July 25, 1965.  He has past work experience as a warehouse worker, supervisor, security guard, and construction worker.  AR 336-340.  Plaintiff was a custodian at a realty company from 1995 through 2003.  AR 308.  At this job he frequently lifted fifty pounds and as much as 100 pounds.  AR 91. He completed nine years of formal education.  AR 126.  On October 23, 2003, Plaintiff injured his lower back while fixing a sink at work.  AR 307-310.  He filed a workers' compensation claim for this injury.  AR 307.

In April, 2004, Plaintiff attempted to return to employment in a light-duty capacity by working at a computer for the entire day. AR 319.  However, he experienced numbness in his legs and hands and pain in his back and, after two days, he left this job and received a special circumstances termination.  AR 319-320.

II.  Plaintiff's Medical History

On October 22, 2003, Plaintiff visited his treating physician,

United States District Court
For the Northern District of California

2

United States District Court
For the Northern District of California

Dr. Andrew Wallach at the El Cerrito Medical Group, for lower back pain.[1]  AR 218.  On November 18, 2003, Plaintiff visited Dr. Wallach again and stated that his back pain was a little worse. AR 214.  On February 3, 2004, Dr. Wallach noted that Plaintiff's pain had improved with physical therapy.  AR 199.  An MRI taken on February 23, 2004 revealed a "small right-lateral disc protrusion at L5-S1, causing moderate right caudal foraminal narrowing."[2] AR 196.  On March 3, 2004, Dr. Wallach noted that Plaintiff had not improved, that he could benefit from more physical therapy and that he should be referred to a spine specialist.  AR 195.  On May 4, 2004, Dr. Wallach noted again that Plaintiff had not improved. AR 193.

On March 9, 2004, Plaintiff visited orthopedic examiner Dr. Anthony Matan.  AR 146.  Dr. Matan's diagnosis was that Plaintiff had a small right lateral disc protrusion as well as degenerative changes at L5-S1.  AR 147.  Dr. Matan recommended that Plaintiff remain off work for at least four weeks when he would be re-examined.  AR 147-148.  On April 6, 2004, Plaintiff was examined by Dr. Matan who found Plaintiff's condition unchanged.  AR 144.  Dr. Matan thought it reasonable that Plaintiff return to "light duty type of work" with no lifting over ten pounds.  Id.  He recommended

---

[1] Plaintiff testified at his hearing that he hurt his back while fixing a sink on October 23, 2003.  AR 307-310.  According to his testimony, this injury would have occurred one day after he visited Dr. Wallach for back pain on October 22, 2003.

[2] Moderate right caudal foraminal narrowing refers to a narrowing of an aperture or perforation through a bone or a membranous structure at the bottom of the spine.  Stedman's Medical Dictionary, 328, 756 (28th ed. 2006) (Stedman's).

3

that Plaintiff continue with physical and water therapy and noted
that Plaintiff was not interested in pursuing more aggressive
treatments such as epidural injections.  Id.  On May 5, 2004,
Plaintiff saw Dr. Wallach and complained of increased back and left
leg pain even while performing modified sedentary duties such as
computer tasks. AR 193.  On May 17, 2004, Dr. Matan found that
Plaintiff still suffered from chronic back pain, but that it was
permanent and stationary.  He noted that Plaintiff did not wish to
pursue more aggressive treatment such as injections or surgery.
AR 142.

On July 1, 2004, Plaintiff complained to Dr. Wallach of back
pain and left hand numbness despite taking Vicodin and Motrin.
AR 191.  Dr. Wallach told Plaintiff he needed to engage in physical
activity.  Id.  However, Plaintiff declined to participate in an
independent swimming pool program.  Id.

On October 22, 2004, orthopedist Dr. James O'Hara examined
Plaintiff at the request of Plaintiff's workers' compensation
attorneys.  AR 267.  Dr. O'Hara reported that Plaintiff had a
paravertebral spasm,[3] list to the left and tenderness in the low
back and pain with sitting and supine straight leg raising.
AR 270.  Dr. O'Hara's impression was that Plaintiff would be
precluded from heavy work because he had lost fifty percent of his
pre-injury capacity for bending, stooping, lifting, pushing or
climbing.  AR 272.

---

[3] Paravertebral spasm is a sudden involuntary contraction of
one or more muscles adjacent to a vertebra or the vertebral column.
Stedman's at 1422, 1795.

4

United States District Court
For the Northern District of California

On November 4, 2004, Dr. Parvez Fatteh, a qualified medical examiner in pain medicine and physical medicine and rehabilitation, examined Plaintiff for his workers' compensation claim at the request of his attorneys. AR 179. Dr. Fatteh opined that Plaintiff had lost seventy-five percent of his ability to bend, stoop, lift, push, pull and climb, was limited to light work and his condition was permanent and stationary. AR 183-184.

On November 28, 2005, Dr. Wallach indicated he felt that Plaintiff was overweight and possibly dramatizing his symptoms. AR 296.

III. Plaintiff's Vocational Rehabilitation Evidence

In March, 2005, Plaintiff underwent vocational testing at the Center for Career Evaluation. AR 126. Plaintiff attended only two of the scheduled three days of testing and for those days he only attended half the day because of his stated low-back discomfort. AR 125.

Plaintiff's reading comprehension skills scored at the 5.6 grade level and his math computation skills scored at the 6.7 grade level. AR 127. Plaintiff successfully performed work activities consistent with bench-level repair and inspection related tasks. AR 128. For instance, Plaintiff could disassemble and re-assemble a door lock, which relates to hands-on mechanical reasoning abilities. Id. Plaintiff's performance on the electronics assembly work sample was assessed as average for accuracy and work rate. Id. This task involved performing tests of continuity on a circuit board, connecting wires and resistors with the use of small hand tools and following schematics. Id. Plaintiff's performance

was assessed as below average for accuracy and above average for work rate on the mechanical inspection work sample.  Id.  His below average fine finger and manual dexterities indicated low ability to perform speed and manual operations at a competitive level.  Id.

IV.   The Hearing

Vocational consultant Annette Eisenberg-Smith, who evaluated Plaintiff as part of the vocational rehabilitation testing described above, testified at the hearing that she did not think Plaintiff was a good candidate for employment because he could barely get through a day without pain.  AR 326.

Plaintiff testified that, since his injury, he has had difficulty getting comfortable due to back pain.  He has trouble sleeping due to the pain and his leg falls asleep.  He takes Vicodin two to four times a day for his pain, but experiences drowsiness as a side effect.  AR 317-318.

Malcolm Brodzinsky, vocational expert (VE), appeared at the hearing at the request of the ALJ.  The ALJ posed a hypothetical question to the VE envisioning an individual with a residual functional capacity (RFC) for "light work" who must be able to alternate sitting and standing at will, must not be required to work at heights or be exposed to hazards, and must be able occasionally to crouch, crawl, kneel, stoop, balance and use ramps and stairs.  AR 341.  The VE testified that there were "unskilled jobs" that such an individual could perform, including small-parts assembler with 200,000 jobs in the national economy and 2,500 jobs in the Bay Area; ticket seller with 30,000 jobs in the national economy and 2,500 jobs in the Bay Area; and production assembler

with 150,000 jobs nationally and 5,000 jobs in the Bay Area.
AR 342-343.

V.   The ALJ's Disability Determination

     In his October 26, 2006 decision, the ALJ addressed the five-step evaluation process[4] outlined in 20 C.F.R. § 404.1520 and found that Plaintiff was not disabled within the meaning of the SSA.
AR 20-26.   At step one of the five-part analysis, the ALJ found that Plaintiff had not worked since the alleged disability onset date.   AR 22.

     At step two, the ALJ found that Plaintiff's degenerative disc disease with likely mild herniation at L5-S1, his hypertension and his obesity were severe within the meaning of the Regulations.   Id.

     At step three, the ALJ found that Plaintiff's impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1 of the Regulations.   AR 23.

     Prior to steps four and five of the analysis, the ALJ weighed the medical and other evidence in the record to assess Plaintiff's RFC.[5]   Id.   The ALJ looked at several sources to make his RFC

     [4] An ALJ must apply a sequential five-step evaluation process to the disability claim pursuant to 20 C.F.R. § 404.1520: (1) is the claimant engaged in substantial gainful work activity; (2) if not, does the claimant have a severe impairment, or combination of impairments; (3) if so, are the impairments listed in, or as severe as those listed in Appendix 1; (4) if not, do the impairments preclude the claimant from performing past relevant work; and (5) if so, is other work precluded?   20 C.F.R. § 404.1520(b)-(g).

     [5] A claimant's RFC is the most he or she "can still do despite his [or her] limitations," or the claimant's maximum ability to perform sustained work in an ordinary work setting on a regular and continuing basis, eight hours a day for five days a week.   20 C.F.R. § 404.1545(a)(1).   The ALJ must weigh all of the relevant medical and other evidence to make the RFC determination.   20 C.F.R. § 404.1545(a)(3).

United States District Court
For the Northern District of California

determination, including: the medical information from Dr. Wallach, Plaintiff's treating physician; the reports of Drs. Matan, Fatteh and O'Hara; and testimony from Plaintiff's witness, vocational consultant Ms. Eisenberg-Smith.  AR 23-25.  Citing progress notes in medical records from Dr. Wallach and Dr. Matan, the ALJ found that Plaintiff's testimony at the hearing was not totally credible. AR 25.  The ALJ determined that Plaintiff retained the RFC for light work with the option to rotate between sitting and standing at will.  AR 23.

At step four of the disability analysis, the ALJ relied on the VE's testimony to conclude that Plaintiff was precluded from working in his past relevant occupation of custodian.  Id.

At step five, again relying on the VE's testimony, the ALJ concluded that Plaintiff was capable of performing light work jobs such as those identified by the VE which exist in a significant number within the national economy.  AR 25-26.  Consequently, the ALJ found that Plaintiff was not disabled within the meaning of the SSA.  Id.

LEGAL STANDARD

A court cannot set aside a denial of benefits unless the ALJ's findings are based upon legal error or are not supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orteza v. Shalala, 50 F.3d 748, 749 (9th Cir. 1995).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger,

514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

To determine whether an ALJ's decision is supported by substantial evidence, a court reviews the record as a whole, not just the evidence supporting the decision of the ALJ.  Walker v. Matthews, 546 F.2d 814, 818 (9th Cir. 1976).  A court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Rather, a court must weigh the evidence which supports the Commissioner's conclusions and that which does not.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

If there is substantial evidence to support the decision of the ALJ, it is well-settled that the decision must be affirmed even when there is evidence on the other side.  Hall v. Sec'y of Health, Educ., & Welfare, 602 F.2d 1372, 1374 (9th Cir. 1979).  The ALJ's decision should also be affirmed when the evidence is susceptible to more than one rational interpretation.  Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984).  If supported by substantial evidence, the findings of the Commissioner as to any fact shall be conclusive.  42 U.S.C. § 405(g);  Vidal v. Harris, 637 F.2d 710, 712 (9th Cir. 1981).

Under the SSA, disability is defined as an

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. § 423(d)(1)(A).  An individual will be determined to be disabled only if his or her physical or mental impairment is so severe that he or she "is not only unable to do his [or her]

9

1   previous work but cannot . . . engage in any other kind of

2   substantial gainful work."   42 U.S.C. § 423(d)(2)(A).

3                              DISCUSSION

4        Plaintiff argues that: (1) the ALJ erred in his finding that

5   Plaintiff retained the RFC to perform light work; (2) the

6   vocational expert's suggested occupations for Plaintiff of ticket

7   seller, small parts assembler and production assembler are not

8   appropriate; (3) the ALJ improperly found Plaintiff not to be

9   credible; and (4) the ALJ did not fully develop the record as

10  required.

11  I.   The ALJ's RFC Determination

12       Plaintiff argues that the ALJ's determination that Plaintiff

13  retained the RFC for light work was not based on substantial

14  evidence in the record.   Citing <u>Desrosiers v. Sec'y of Health and</u>

15  <u>Human Services</u>, 846 F.2d 573, 576 (9th Cir. 1988), Plaintiff also

16  argues that the ALJ's use of the conclusions of workers'

17  compensation doctors to determine that he can do light work was

18  inappropriate because workers' compensation categories are not the

19  same as social security disability categories.

20       In <u>Desrosiers</u>, the court explained that workers' compensation

21  benefit categories are determined by whether a claimant sits,

22  stands or walks most of the day and social security benefits are

23  determined primarily by step increases in lifting capacity.   <u>Id.</u>

24  In <u>Desrosiers</u>, the court held that the determination of the

25  plaintiff's treating physician that he could only perform sedentary

26  work was not contradicted by two workers' compensation doctors who

27  only precluded the plaintiff from heavy work because the workers'

28                                 10

United States District Court
For the Northern District of California

1    compensation categories did not determine the level of work the

2    plaintiff could perform under the Social Security Act.   Id.

3        In this case, however, no such contradictory evidence appears

4    in the record.   Although workers' compensation and social security

5    categories are not the same, Desrosiers does not preclude the ALJ

6    from using the underlying medical findings of workers' compensation

7    doctors in his determination of a Plaintiff's RFC.

8        Dr. O'Hara opined that Plaintiff "would be precluded from

9    heavy work and had lost 50% percent of his pre-injury capacity for

10   bending, stooping, lifting, pushing, pulling, or climbing."

11   AR 272.   Dr. Fatteh concluded that Plaintiff "was limited to light

12   work and had lost 75% of his ability to bend, stoop, lift, push,

13   pull, and climb."   AR 184.   However, despite workers' compensation

14   terminology in Dr. Fatteh and Dr. O'Hara's opinions, they still

15   support the ALJ's finding that Plaintiff is capable of light work

16   subject to a sit/stand option and environmental postural

17   limitations.

18       Plaintiff reported to the Social Security Administration that

19   he lifted fifty pounds frequently and as much as 100 pounds in his

20   previous job as a janitor.   AR 91.   Even accepting Dr. Fatteh's

21   more conservative opinion of a seventy-five percent decrease in

22   lifting capacity, Plaintiff is capable of lifting over ten pounds

23   frequently and as much as twenty-five pounds.   This is consistent

24   with the RFC for light work which requires lifting ten pounds

25   frequently and a maximum of twenty pounds.   20 C.F.R.

26   § 404.1567(b).   The ALJ also included in his RFC the further

27   limitation that Plaintiff be able to sit and stand at will in order

28
                                   11

to accommodate his back impairment.  Thus, the evidence in the record substantially supports the ALJ's finding.

Plaintiff also argues that Dr. Matan limited him to lifting ten pounds, which would put him in the RFC category of "sedentary" rather than "light" work.  In April, 2004, Dr. Matan limited Plaintiff to lifting ten pounds.  AR 170.  However, this restriction was never renewed by Dr. Matan nor endorsed by any other physician who subsequently examined Plaintiff.  Thus, Dr. Matan's opinion does not establish that Plaintiff was limited to lifting ten pounds for a consecutive twelve month period.  42 U.S.C. § 423(d)(1); 20 C.F.R. § 404.1512.

Citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003); Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001); and SEC v. Chenary Corp., 332 U.S. 194, 196 (1947), Plaintiff argues that Defendant improperly makes a post hoc argument by using "assumptions and self-generated mathematical calculations" to support the ALJ's decision.  These cases stand for the principle that a court reviewing an agency's decision must judge the decision solely on the grounds established by that agency.  See e.g., Chenary Corp., 332 U.S. at 196.  That is, a court reviewing a decision by an ALJ is constrained to review the reasons provided by the ALJ.  Connett, 340 F.3d at 874.  However, the ALJ relied on the opinions of Drs. Matan and Wallach in making his RFC determination, not just the doctors who evaluated Plaintiff for his workers' compensation claim.  AR 23-24.  And, as discussed above, the ALJ's reliance on the workers' compensation doctors' reports was proper because he relied on their underlying medical findings, not on

1   their workers' compensation categorization.  <u>Id.</u>  Thus, substantial

2   evidence supports the ALJ's decision regarding Plaintiff's RFC.

3   II.  The ALJ's Determination that Plaintiff can Perform a
         Significant Number of Jobs

4        Plaintiff asserts that he cannot perform the three jobs that

5   the VE said he could.

6        A.   Ticket Seller

7        Plaintiff argues that he cannot perform the job of ticket

8   seller because it requires a limited education, a higher level of

9   education than he has.  Plaintiff claims that the ALJ incorrectly

10  classified him as having a "limited" education which is a seventh

11  through the eleventh grade level.  20 C.F.R. § 404.1564(b)(3).

12  Plaintiff claims that, based on the findings of vocational

13  consultant Annette Eisenberg-Smith, he has less than a limited

14  level of education, likely a marginal education.  A marginal

15  education encompasses formal schooling through the sixth grade and

16  the "ability in reasoning, arithmetic, and language skills . . .

17  needed to do simple, unskilled types of jobs."  20 C.F.R.

18  § 404.1564(b)(2).  Eisenberg-Smith found that Plaintiff's reading

19  comprehension skills were at the 5.6 grade level and his math

20  computation skills were at the 6.7 grade level, thus indicating a

21  marginal level of education.  AR 127.

22       The VE testified, however, that the three jobs he identified,

23  including that of ticket seller, were all unskilled.  AR 341-43.

24  Thus, even with only a marginal education, Plaintiff can perform

25  those jobs because unskilled jobs can be done by those with

26  marginal educational levels.  <u>Id.</u>  In addition, the VE testified

27

28                                    13

United States District Court
For the Northern District of California

1 that, in the past, Plaintiff was able to perform both skilled and
2 semi-skilled work as a construction worker and a janitor. AR 336,
3 339. These jobs require much higher reasoning, math and language
4 abilities than the jobs the VE identified and Plaintiff was able to
5 perform them. See Dictionary of Occupational Titles, 381.137-010,
6 869.664-014 (1991). Therefore, Plaintiff is able to perform
7 unskilled jobs with his educational level.

8    Citing a Bureau of Labor Statistics publication that indicates
9 that nearly half of all cashiers work part-time, Plaintiff argues
10 that ticket seller is a part-time job and thus does not meet the
11 step five requirement for available full-time work. See Bureau of
12 Labor Statistics, U.S. Dept. of Labor, Occupational Outlook
13 Handbook, 2006-07 Edition, Cashiers, at
14 http://www.bls.gov/oco/ocos116.htm. Plaintiff argues that the ALJ
15 improperly failed to ascertain how many ticket-seller jobs are
16 part-time. Defendant responds that Plaintiff's statistic relates
17 to cashiers, not ticket sellers. Defendant hypothesizes that, even
18 if half of the ticket seller jobs were part-time, 1,250 regional
19 ticket seller jobs would still be available and that is a
20 significant number. Defendant is correct. See Baker v. Sec'y of
21 Health and Human Servs., 882 F.2d 1474, 1479 (9th Cir. 1989) (1,266
22 jobs in county constitutes a significant number); Trimar v.
23 Sullivan, 966 F.2d 1326, 1330-32 (10th Cir. 1992) (850 to 1,100
24 potential jobs significant); Jenkins v. Bowen, 861 F.2d 1083, 1087
25 (8th Cir. 1988) (500 jobs).

26    B.   Small Parts Assembler and Production Assembler
27    Plaintiff argues that he cannot perform the small parts

28                                   14

United States District Court
For the Northern District of California

assembler and production assembler jobs because of his inability to do the inspection component of the jobs.

However, the ALJ found that Plaintiff could perform work as an assembler; he did not suggest that Plaintiff could perform manual inspection jobs.  AR 26.  Citing the <u>Dictionary of Occupational Titles</u>, Plaintiff contends that assembler jobs involve inspection because such jobs "may" require workers to "tend machines."  <u>See Dictionary of Occupational Titles</u>, 706.687-010 (1991).  Tending a machine, Plaintiff claims, involves inspection.  However, Plaintiff offers no authority for this assertion.

Relying on the vocation consultant's findings, Plaintiff also argues that his below average fine finger and manual dexterity skills inhibit him from performing manual operations at a competitive level, which prevents him from performing small parts assembler and production assembler jobs.  AR 128.  However, this part of the vocational assessment report referred to Plaintiff's below average score for accuracy in mechanical inspection work, not assembler work.  AR 128.  The vocational assessment report indicates that Plaintiff performed at an average level for production and small parts assembler jobs.  AR 130.  Furthermore, Plaintiff "was successful with disassembling and reassembling a door lock," and his performance "was assessed average for both accuracy and work rate on the Electronics Assembly work sample" which "involved performing tests of continuity on a circuit board, connecting wires and resistors with the use of small hand tools, and following schematics/diagrams."  AR 128.  The vocational assessment also showed that Plaintiff was successful at assembling

15

1    objects and using small tools.  Id.  Therefore, substantial

2    evidence supported the ALJ's finding that Plaintiff can perform

3    work as an assembler.

4    III. Plaintiff's Credibility

5         Plaintiff argues that the ALJ improperly concluded that

6    Plaintiff's "statements concerning the intensity, persistence and

7    limiting effects of [his] symptoms are not entirely credible."

8    AR 25.

9         When assessing a claimant's subjective statements about

10   symptoms and their functional effects, the "ALJ must make a finding

11   as to the credibility of the claimant's statements."  Robbins v.

12   Social Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).  A

13   claimant's subjective statement regarding a symptom must be

14   supported by objective medical evidence, generated by medically

15   acceptable techniques, of an underlying impairment, "which could

16   reasonably be expected to produce the . . . symptoms alleged."  42

17   U.S.C. § 423(d)(5)(A); Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th

18   Cir. 1986).

19        However, an ALJ may not disregard a claimant's subjective

20   testimony about excess pain, "solely on the ground that it is not

21   fully corroborated by objective medical findings."  Cotton, 799

22   F.2d at 1407; Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989).

23   "Unless there is affirmative evidence showing that the claimant is

24   malingering, the Commissioner's reasons for rejecting the

25   claimant's testimony must be 'clear and convincing.'"  Lester v.

26   Chater, 81 F.3d 821, 834 (9th Cir. 1995) (quoting Swenson v.

27   Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).  This means that "the

28

16

United States District Court
For the Northern District of California

1   ALJ must identify what testimony is not credible and what evidence

2   undermines the claimant's complaints." Id.

3       "[E]vidence of 'conservative treatment' is sufficient to

4   discount a claimant's testimony regarding severity of an

5   impairment." Para v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007)

6   (citing Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995).

7   Further, symptom exaggeration is a valid basis for discounting

8   credibility. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir.

9   2001).

10      The ALJ identified evidence in the record which undermined

11  Plaintiff's testimony concerning the intensity, persistence and

12  limiting effects of his symptoms. AR 25. The ALJ noted that

13  Plaintiff refused epidural injections; ignored the doctor's

14  instruction to be more active; improved with physical therapy;

15  complained of left arm and hand pain and numbness, for which there

16  was no explanation in the record; and exhibited "dramatic"

17  behavior. AR 25.

18      Citing a website on epidural results and precautions,

19  Plaintiff contends that his refusal of epidural injections was

20  reasonable due to the risks associated with them. However, the

21  medical evidence cited by Plaintiff shows that the risk is low and

22  complications are rare. See Ray Baker, MD, Epidural Results and

23  Precautions (2004) at http://www.spine-

24  health.com/Treatment/Injections/Epidural-Injections/Epidural-

25  Results-And-Precautions.html. Further, there is no evidence in the

26  record that Plaintiff was aware of these medical risks when he

27  refused the epidural injections. Therefore, the ALJ correctly

28                                  17

United States District Court
For the Northern District of California

1   relied on this factor in his conclusion.

2       Plaintiff argues that the notation in Dr. Wallach's medical

3   charts that Plaintiff should be more active has no bearing on his

4   credibility.  AR 191.  He testified that he did try to get out,

5   exercise and walk around.  AR 317.  Dr. Wallach did note that

6   Plaintiff refused to participate in a recommended exercise pool

7   program, AR 191, but this is not sufficient to support the AL's

8   reliance on this factor.

9       Plaintiff also claims that the ALJ incorrectly relied on Dr.

10  Wallach's February 3, 2004 medical notation that he improved with

11  physical therapy.  AR 199.  On March 3, 2004, Dr. Wallach noted

12  that Plaintiff had not improved and that he needed more physical

13  therapy and a referral to a spine specialist.  AR 195.  On May 4,

14  2004, Dr. Wallach noted again that Plaintiff had not improved.

15  AR 193.  It is not clear whether Plaintiff failed to improve

16  because he did not do the recommended physical therapy.

17  Nonetheless, this factor does not necessarily detract from

18  Plaintiff's credibility.

19      The ALJ found that the medical record did not support

20  Plaintiff's complaint of left arm and hand pain and numbness.

21  AR 25.  Nothing in the medical record explains this symptom.

22  Medical evidence is a factor that the ALJ can consider in his

23  credibility analysis.  20 C.F.R. § 404.1529(c)(2).  Maier v. Comm'r

24  of Soc. Sec., 154 F.3d 913, 915 (9th Cir. 1998).  Thus, the ALJ

25  properly considered the lack of support for this complaint.

26      Finally, the ALJ found that Plaintiff exhibited some

27  "dramatic" behavior in regard to his symptoms.  AR 25.  Dr. Wallach

28

noted "possible dramatization of symptoms" in his progress notes after seeing Plaintiff on November 28, 2005.  AR 296.  The vocational evaluation report describes Plaintiff as grimacing, complaining of pain and taking rest breaks.  AR 128.  Evidence supports the ALJ's reliance on these factors.

Thus, some of the ALJ's comments about Plaintiff's credibility are supported by the evidence and some are not.  Nonetheless, substantial evidence supports the ALJ's finding that Plaintiff's statements about his symptoms were not entirely credible.

IV.  Need for the ALJ to Develop the Record Further

Plaintiff argues that the ALJ did not fully develop the record as required.  The ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered.  Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). When a claimant is not represented by counsel, the ALJ "must be especially diligent in ensuring that favorable, as well as unfavorable facts and circumstances are elicited."  Key v. Heckler, 754 F.2d 1545, 1551 (9th Cir. 1985) (citing Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978).  An ALJ's failure to explore the facts adequately is a basis for remand where the applicant was not represented at the hearing, even if the applicant waived counsel knowingly.  Vidal v. Harris, 637 F.2d 710, 714-15 (9th Cir. 1981).

However, the ALJ's duty to develop the record further is triggered only when the evidence is ambiguous or the record is inadequate to allow for proper evaluation of the evidence.  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

1    Plaintiff contends that the ALJ should have conducted a

2 supplemental hearing after he received the vocational testing

3 evaluation written by Eisenberg-Smith because the report should

4 have affected the ALJ's RFC determination which, in turn, would

5 have affected the testimony of the vocational expert.  Plaintiff

6 also argues that the ALJ should have asked the workers'

7 compensation physicians how their analysis applied to his claim for

8 social security benefits.  Finally, Plaintiff argues that the ALJ

9 should have asked the vocational expert numerous additional

10 questions.

11    Nonetheless, substantial evidence supports the ALJ's

12 determination that Plaintiff was qualified to perform a reduced

13 range of unskilled work.  Taking the vocational testing report into

14 consideration, Plaintiff has average ability to perform the jobs

15 the vocational expert identified and such jobs exist in significant

16 numbers in the national economy.  There is no evidence that a

17 supplemental hearing or additional questions to the vocational

18 expert would affect that determination.  It would be inappropriate

19 to ask workers' compensation doctors how the workers' compensation

20 claim translates to a claim for social security benefits.  The

21 record before the ALJ was neither ambiguous nor inadequate to allow

22 for proper evaluation of the evidence.

23                          CONCLUSION

24    Because the ALJ properly applied the five-step analysis to

25 conclude that Plaintiff was not disabled, and for the more specific

26 reasons outlined above, Defendant did not commit reversible error.

27 The Court finds that the ALJ's decision that Plaintiff is not

28                              20

disabled within the meaning of the SSA was supported by substantial evidence in the record and was based upon proper legal standards. Accordingly, Plaintiff's motion for summary judgment or for remand is DENIED and Defendant's motion for summary judgment is GRANTED. The Clerk shall enter judgment accordingly and close the file. Each party shall bear his own costs.

IT IS SO ORDERED.

Dated:   10/15/08

_____
CLAUDIA WILKEN
United States District Judge